Sean J. O'Hara (#024749)
KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
Telephone: (480) 421-1001
Facsimile: (480) 421-1002
sjo@kflawaz.com

Attorneys for Applicants W.L. Gore & Associates,
Inc. and W.L. Gore & Associates Canada Inc.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| *In re* Ex Parte Application of W.L. Gore & Associates, Inc. and W.L. Gore & Associates Canada Inc., <br><br>Applicants. | Case No. <br><br>**APPLICATION FOR AN ORDER UNDER 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN A FOREIGN PROCEEDING** |

W.L. Gore & Associates, Inc. and W.L. Gore & Associates Canada Inc. (collectively, "Gore") applies to the Court *ex parte*[1] for an order under 28 U.S.C. § 1782 granting Gore leave to obtain discovery from Dr. David Goldfarb for use in foreign litigation pursuant to a letter of request issued from a foreign court. This application is supported by the memorandum of points and authorities below, the Declaration of Marcus Klee (attached as Ex. A), the Canadian Commission issued to Eve K. Burton to conduct the requested discovery (attached as Ex. B), and the Letter of Request issued by the Federal Court of Canada (attached as Ex. C). The subpoena *duces tecum* Gore

---

[1] Courts in the Ninth Circuit routinely handle § 1782 requests on an *ex parte* basis. *See In re Judicial Assistance Pursuant to 28 U.S.C. § 1782 ex rel. Macquarie Bank Ltd.*, No. 2:14-cv-0797-GMN-NJK, 2014 WL 7706908, at *1 (D. Nev. June 4, 2014) (citing *In re Roebers*, No. C12-80145 MISC RS (LB), 2012 WL 2862122, at *2 (N.D. Cal. July 11, 2012)). Any issues concerning the propriety of the discovery, including whether it satisfies § 1782, are appropriately addressed by the respondent on a motion to quash or modify the subpoena, or in response to a motion to compel. *In re Judicial Assistance Pursuant to 28 U.S.C. § 1782 ex rel. Macquarie Bank Ltd.*, No. 2:14-cv-00797-GMN-NJK, 2015 WL 3439103, at *2 (D. Nev. May 28, 2015). Moreover, Gore will promptly serve copies of this application and related filings on Dr. Goldfarb's counsel as a matter of professional courtesy.

proposes to serve on Dr. Goldfarb (attached as Ex. D), additional exhibits, and a proposed order are also submitted with this application.

## I. Introduction

The Federal Court of Canada has issued a letter of request to this Court asking this Court for assistance in obtaining discovery "necessary for the purpose of justice"—namely, a subpoena *duces tecum* for the testimony and documents in the possession of the named inventor of a patent-in-suit in a Canadian patent infringement action.

The named inventor, Dr. David Goldfarb is an Arizona resident outside the jurisdiction of the Canadian court. The requested testimony and documents are directly relevant to the disputed issues in the foreign proceeding, and are in the possession of Dr. Goldfarb in Arizona. Accordingly, Gore seeks the issuance of the subpoena attached as Exhibit B.

## II. Background

The Canadian litigation is an action for infringement by Gore of Canadian Patent No. 1,341,519 (the "519 Patent"). Gore alleges that the 519 Patent is invalid and seeks a declaration of invalidity. Dr. Goldfarb is listed as the inventor of the 519 Patent.

The 519 Patent and the corresponding American patent (the "135 Patent") have been the subject of litigation in the past. This included an interference proceeding in the United States and a conflict proceeding in Canada, neither of which involved a determination of infringement or validity. *Cooper v. Goldfarb*, 240 F.3d 1378 (Fed. Cir. 2001); *Goldfarb v. W.L. Gore & Associates Inc.*, 2001 FCT 45, aff'd 2002 FCA 486 (Can.), attached as Ex. K. More recently, there has also been infringement and validity litigation over the American 135 Patent. *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 670 F.3d 1171 (Fed. Cir. 2012)).

The Canadian litigation is not simply a mirror image of the American lawsuit. The claims of the Canadian 519 Patent are significantly broader than the claims of the American 135 Patent. For example, each claim of the American patent is limited to a vascular structure (claims 1-13, 15-19, 27), vascular graft (claims 14, 25-26), or a

vascular prosthesis (claims 20-24). In contrast, none of claims 1-17, 19-20, and 22-27 of the Canadian patent are similarly limited to a vascular structure, vascular graft or vascular prosthesis.

More Gore products are alleged to infringe in the Canadian litigation than were alleged to infringe in the American litigation. In the American infringement lawsuit, Bard contended that the following Gore products infringed the 135 Patent: standard grafts, stretch grafts, Propaten grafts, Intering grafts, Intering stretch grafts, Acuseal Patch, Cardiovascular patch, Viabahn stent-grafts, Excluder stent-grafts, Tag stent-grafts, and Viatorr stent-grafts. (Jury Verdict 2007, attached as Ex. L.) In the Canadian litigation, the Plaintiffs allege that the following Gore products infringe the 519 Patent: standard grafts, stretch grafts, Propaten grafts, Intering grafts, Acuseal grafts, Acuseal Patches, Viabahn stent grafts, Excluder stent grafts, Tag stent grafts, Viatorr stent grafts, Viabil stent grafts, and Hybrid vascular grafts. (Further Amended Statement of Claim ¶¶ 13-14, attached as Ex. F.) In other words, there are three types of Gore products (Acuseal grafts, Viabil stent grafts, and Hybrid vascular grafts) involved in the Canadian litigation that were not at issue in the American infringement proceeding.

Further, the validity of the Canadian 519 Patent has been challenged in the Canadian litigation on legal and factual grounds that were not raised in the American infringement lawsuit. In the American lawsuit, Gore alleged that the 135 Patent was invalid for improper inventorship, anticipation, obviousness, and lack of written description. *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 670 F.3d 1171 (Fed. Cir. 2012).

In addition to each of those grounds of invalidity, which stand to be determined under Canadian patent law standards, Gore alleges that the Canadian 519 Patent is invalid for lack of utility. Utility under Canadian law must have been either demonstrated or soundly predicted by the inventor across the breadth of each claim as of the Canadian filing date of January 16, 1975. The Canadian doctrine of *sound prediction* requires: (1) a factual basis for the prediction, (2) an articulable and sound line of reasoning from which

the desired result can be inferred from the factual base, and (3) proper disclosure of both in the patent. *Apotex Inc. v. Wellcome Foundation Ltd.*, 2002 SCC 77 ¶ 70 (Can.), attached as Ex. M.  In the Canadian litigation, Gore alleges that there was no demonstration or sound prediction of utility across the breadth of each claim by the named inventor before the Canadian filing date. (Amended Statement of Defence and Counterclaim ¶¶ 33-43, attached as Ex. G.)

Gore also alleges that the Canadian 519 Patent is invalid because its claims are broader than the invention as contemplated by Dr. Goldfarb. (*Id.* ¶¶ 44-49.) This requires a consideration of what the named inventor actually contemplated his invention to be. *See Ratiopharm Inc. v. Pfizer Limited*, 2009 FC 711 ¶¶ 196-200 (Can.), attached as Ex. N.

Gore further alleges in the Canadian litigation that the 519 Patent is invalid because it contains omissions or additions that were wilfully made for the purpose of misleading. (Amended Statement of Defence and Counterclaim ¶ 31A). This requires a consideration of the knowledge of the named inventors as to how those statements came to be added into the 519 Patent. *See Ratiopharm Inc. v. Pfizer Limited*, 2009 FC 711 ¶¶ 192-194. Accordingly, there are significant differences between the prior proceedings and the current Canadian litigation beyond the application of different legal standards. Among other things, the Canadian 519 Patent claims are broader than the US 135 Patent claims, there are more accused products, and there are new legal theories involving a different operative date—January 16, 1975, the date the Canadian patent application was filed.

Gore seeks to obtain testimony and documents from Dr. Goldfarb that is relevant to these and other topics that are unique to the current Canadian litigation. This includes, for example: (1) if (and if so, by what means, and when) Dr. Goldfarb demonstrated or soundly predicted the utility promised and/or claimed across the breadth of each claim as of the Canadian filling date; (2) what did Dr. Goldfarb contemplate his invention to be; and (3) why certain statements were included in the Canadian 519 Patent. Despite his prior testimony concerning his alleged inventions, Dr. Goldfarb has not testified in a

proceeding which addressed these factual issues. The Plaintiffs in the Canadian litigation have themselves indicated that Dr. Goldfarb is in a better position to answer questions on these topics than the Plaintiffs are. (Klee Decl. ¶ 10.)

This application is narrowly tailored to allow Gore to obtain discovery from Dr. Goldfarb concerning central issues in the Canadian litigation that Gore cannot obtain any other way. Gore is willing to accommodate any of Dr. Goldfarb's legitimate and substantiated health concerns in its conduct of the discovery.

### III. Legal Standard

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). During that time, Congress has "substantially broadened the scope of assistance federal courts could provide for foreign proceedings." *Id.* at 247-48. Section 1782 provides in part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal…. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a). This statute sets out three elements that, if met, empower the Court to grant the application and permit discovery: (1) the discovery is sought from a person residing in the district of the Court to which the application is made, (2) the discovery is for use before a foreign tribunal, and (3) the applicant is an "interested person." *Id.* at 264-65; *London v. Does 1-4*, 279 F. App'x 513, 515 (9th Cir. 2008).

Once these threshold elements are met, the Court then turns to several discretionary factors, including:

(1) whether the "person from whom discovery is sought is a participant in

5

the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the … court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the discovery request is an "attempt to circumvent proof-gathering restriction or other policies of a foreign country or the United States"; and (4) whether the discovery requested is "unduly intrusive or burdensome."

*In re Ex Parte Apple Inc.*, No. MISC 12-80013 JW, 2012 WL 1570043, at *1 (N.D. Cal. May 2, 2012) (quoting *Intel*, 542 U.S. at 264-65).

**IV. Gore's Application Should Be Granted**

As might be surmised from the fact that the Federal Court of Canada has reached out to this Court for assistance, Gore's application satisfies all of the statutory requirements in § 1782, and each of the discretionary factors articulated in *Intel* weighs in favor of granting the application.

**A. Gore's Application Meets the Requirements of Section 1782.**

This application meets all three of the requirements found in section 1782 itself.

First, the person from whom discovery is sought, Dr. Goldfarb, "resides or is found" in this District. Dr. Goldfarb resides in Scottsdale, Arizona. (Klee Decl. ¶ 7.)

Second, the discovery is sought for use in a "proceeding before a foreign tribunal." Indeed, the foreign tribunal itself is requesting this information. (Letter of Request.) Courts in this circuit have recognized that civil lawsuits in foreign courts are the quintessential proceedings contemplated in § 1782. *E.g., In re Ex Parte Motorola Mobility, LLC*, No. C 12-80243 EJD (PSG), 2012 WL 4936609, at *2 (N.D. Cal. Oct. 17, 2012); *In re Ex Parte LG Elecs. Deutschland GmbH*, No. 12cv1197-LAB (MDD), 2012 WL 1836283, at *1 (S.D. Cal. May 21, 2012).

Third, as parties in the Canadian lawsuit, the Gore entities each qualify as an "interested person." *Intel*, 542 U.S. at 256 ("No doubt litigants are included among . . . the 'interested person[s]' who may invoke § 1782").

Accordingly, Gore has satisfied each statutory requirement for discovery assistance under § 1782.

**B. The *Intel* Factors Strongly Favor Granting This Application.**

Each of the discretionary factors identified in the Supreme Court's *Intel* opinion weighs heavily in favor of granting this application.

1. <u>Dr. Goldfarb Is a Non-Party in the Canadian Litigation.</u>

"[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264. In this case, Dr. Goldfarb is not a party in the Canadian litigation and the Federal Court of Canada does not have jurisdiction over him. (Klee Decl. ¶¶ 8, 11.) As such, this factor weights in Gore's favor.

2. <u>The Testimony and Documents Sought is Critical to Gore's Defense and Counterclaim, and Would Be Presented to a Receptive Canadian Court.</u>

In *Intel,* the Supreme Court advised district courts to "take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." 542 U.S. at 264. Here, the Letter of Request from the Federal Court of Canada conclusively tilts this factor strongly in favor of granting the application. The Letter of Request is not ministerial; rather, the Canadian court only issued this Letter after Gore's motion demonstrated the need for this discovery due to its central relevance to the Canadian lawsuit. (Klee Decl. ¶ 13.) The Letter itself makes clear that this discovery is "necessary for the purpose of justice" and that not only would the Canadian court be *receptive* to this discovery, the Canadian court is affirmatively *asking* for this discovery. Accordingly, this factor weighs heavily in Gore's favor.

3. <u>No Foreign Discovery Restrictions Bar This Request.</u>

While § 1782 does not strictly require that documents or testimony be discoverable in the foreign court, district courts may consider if there is a bad-faith motive "to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. Again, the Letter of Request

7

conclusively establishes that this factor weighs heavily in favor of granting the Application—this Court's Canadian counterpart has expressly reached out for assistance.

### 4. The Discovery Is Narrowly Tailored to Avoid Undue Burden.

The *Intel* Court noted that "unduly intrusive or burdensome requests may be rejected or trimmed." *Id.* Here again, Gore does not propose intrusive or burdensome discovery, but rather a deposition of the key witness (the named inventor of a patent-in-suit) and production of documents in his possession or control concerning his involvement in and development of the claimed invention. (Letter of Request; Klee Decl. ¶¶ 6, 9-10, 15.) This is routine discovery in every patent infringement action, whether in the United States or Canada. (*Id.* ¶ 12.) While Dr. Goldfarb is living in a retirement/assisted living community and his lawyers claim that his health is too poor for him to sit for deposition, Gore has offered to make reasonable accommodations for his comfort and well-being. (*Id.* ¶ 16.) As the standard for avoiding a deposition entirely due to health is exceptionally high and requires proof beyond a lawyer's say-so, these issues are best addressed—if necessary—in the context of a motion to modify or quash the subpoena in the event Gore and Dr. Goldfarb are not able to come to an agreement about the conduct of the depositions. *See, e.g., NuCal Foods, Inc. v. Quality Egg LLC*, No. CIV S-10-3105 KJM-CKD, 2012 WL 6629573, at *2-3 (E.D. Cal. Dec. 19, 2012) (denying motion for protective order prohibiting deposition due to witness's health); *In re Judicial Assistance Pursuant to 28 U.S.C. § 1782 ex rel. Macquarie Bank Ltd.*, No. 2:14-cv-00797-GMN-NJK, 2015 WL 3439103, at *2 (D. Nev. May 28, 2015) (quashing subpoena issued under § 1782 due to, among other things, burden on respondent). Because this subpoena seeks centrally relevant and targeted discovery and any undue burden on the witness is speculative, this factor also weighs in favor of granting the application.

### V. Conclusion

Gore's application not only satisfies the three requirements in § 1782, every discretionary factor articulated by the Supreme Court in *Intel* weighs in favor of granting the application. Accordingly, Gore respectfully requests that this Court cooperate with

the Federal Court of Canada in facilitating discovery in this patent litigation by entering the proposed order accompanying this application.

DATED this 16th day of July, 2015.

KERCSMAR & FELTUS PLLC


By: *s/ Sean J. O'Hara*
Sean J. O'Hara
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
Attorneys for Applicants W.L. Gore & Associate, Inc. and W.L. Gore & Associates Canada Inc.